# CASES

IN THE

# APPELLATE COURTS OF ILLINOIS.

SECOND DISTRICT—APRIL TERM, 1901.

## Spring Valley Coal Co. v. City of Spring Valley.

1. CITIES—*Liability for Property Destroyed by Mobs.*—Where the owner of property destroyed by a mob, does all that he can reasonably be expected to do in the way of notifying the authorities of a city in due time and season so that such authorities may take measures to prevent destruction, and such authorities fail to use reasonable diligence to prevent it, or if in any way they aid, sanction or permit, by carelessness, neglect or wrongful act, such destruction, the city will be liable to an action on behalf of the owner of such property, under the act to indemnify owners of property for damages occasioned by mobs and riots. (Laws 1887, 237.)

2. MOBS—*Abandonment of Property by the Owner's Servants.*—The fact that the employes of the proprietor of a store, when attacked by a mob might have lawfully resisted the entrance of the mob into the store and might have used deadly weapons in so doing, did not do so, but left the store because they were afraid of the mob, will not prejudice the right of the proprietor to a recovery under said act.

**Trespass on the Case,** for property destroyed by a mob. Appeal from the Circuit Court of La Salle County; the Hon. CHARLES A. BISHOP, Judge, presiding. Heard in this court at the April term, 1901. Reversed and remanded. Opinion filed July 12, 1901.

ALFRED R. GREENWOOD, attorney for appellant.

DUNCAN & DOYLE and J. L. MURPHY, attorneys for appellee.

MR. JUSTICE WATERMAN delivered the opinion of the court. This case having been here on two previous occasions,

(230)

the facts are so fully set forth in Spring Valley Coal Company v. City of Spring Valley, 65 Ill. App. 571 and 72 Ill. App. 629, that it is unnecessary to restate them or allude to them other than in respect to the matters concerning which, it is urged by appellee, the showing made in the court below varies from what it was upon either of the previous trials.

Appellee urges that the evidence upon the last trial disclosed conduct on the part of the agents and officers of appellant, in whose special care the company was placed, such as, under the statutes of this State, forbids a recovery in this case. The portion of the statute alluded to by appellee is as follows:

" Section 3. No person or incorporation shall be entitled to recover in any such action, if it shall appear on the trial thereof that such destruction or injury of property was occasioned, or in any way aided, sanctioned or permitted, by the carelessness, neglect or wrongful act of such person or corporation; nor shall any person or corporation be entitled to recover any damages for any destruction or injury of property aforesaid, unless such party shall have used all reasonable diligence to prevent such damage."

That prior to the destruction by mob violence of the property of appellant the authorities of the city of Spring Valley had been duly notified that there was danger of such destruction, and had been asked to protect the property of appellant, there is no dispute. All that any party could reasonably be expected to do in the way of notifying the authorities and the city of Spring Valley in due time and season so that they might have taken steps to prevent such destruction, was done. Indeed, it appears that protection was promised by the mayor of the city of Spring Valley. If, therefore, appellant failed in any respect to use reasonable diligence to prevent the damage of its property, or if in any way it aided, sanctioned or permitted, by carelessness, neglect or wrongful act, such destruction or injury, it was not in failing to give notice to the proper authorities of the injury it apprehended, or any neglect to call upon them in proper time for protection. What is urged

by appellee in this regard is principally the abandonment of the store by the agents of appellee after it had been attacked by the mob and the failure to return to the same until daylight had dawned upon the scene of the riot.

It is not seriously contended by appellee that appellant failed in any way or wise to use all reasonable diligence for the protection of its property until after the front windows of its store had been broken in by the mob. It appears that just prior to this the manager of appellant, alarmed by the threatening character of the multitude in front of its store, advised a lady customer to leave the store by the rear door, which she did; that shortly thereafter a large stone was hurled through one of the plate glass windows in the front which was speedily followed by a shower of missiles consisting of bricks and stones, many of them as large as a man's fist, of which such a quantity was thrown this evening into appellant's store that the next morning about a bushel of the same was found in the front portion of the store, back from fifty to 100 feet from the windows through which they had come; upon the throwing of which the four or five armed servants of appellant left the store, going out by the rear door.

It is quite true that the servants of appellant might lawfully have resisted the entrance of the mob into the store and might lawfully have used deadly weapons in so doing. It was, however, quite apparent that unless they were prepared to and did fire into the mob such resistance would be unavailing, and it was and is very questionable whether such firing would have saved the property of the appellant against the attack of a mob numbering several hundred, and who had already, in assailing and destroying the property of appellant, made use of such violence; and certainly it must be said that there was then reasonable probability for thinking that the little group of defendant's servants, if they did fire into the mob, would become the victims of its rage without saving appellant's property. They testified that they left the store because they were afraid of the mob.

Michael Hicks was at that time a police officer, city mar-

shall of the city of Spring Valley. He had held that office at that time for about a year and a half. The mayor was then chief of police, and Michael Hicks stood next to him in authority. Michael Hicks did attempt to stay the action of the mob, and seized hold of one of the rioters to prevent his action, until, pulled and hustled and struck in the back with a rock he said he thought it best to leave the mob alone. In his own language, he was afraid of getting shot if he stayed there. So after seeing the mob rush into the store he went away to find assistance, but getting none, after the expiration of about an hour he returned, and found the rioters still carrying goods out of the store, but evidently having obtained all that seemed to them worth carrying off, and ready to abandon the place, so that without much difficulty he was able to exclude a few loiterers and close the place up. It does not appear that after this anything was taken away, while as before stated, the servants of appellant did not return until the next morning.

It is idle to insist in the face of the facts, most abundantly shown, that after the authorities of appellee failed to afford any protection against the assault and loss, and the only police officer attempting to do his duty was overpowered by the mob, appellant's servants should have risked their lives in an attempt to do what the lawful authorities of the city either felt themselves unable or were unwilling to attempt. The evidence affords no warrant for thinking that any effort on the part of appellant's servants would have resulted in a preservation of its property. It was toward appellant, its officers and agents, that the rage of the mob was directed, and it is manifest that efforts upon their part to protect the property would have been received very differently from a vigorous and determined effort by the authorities of the city, against whom, so far as appears, the rioters had no animosity.

It is true as is urged, that this case has been three times tried, and that three juries have found a verdict for defendant. But we do not think that either the evidence or the circumstances attending the respective trials are such as

forbid a reversal of this, the third verdict so manifestly opposed to the evidence.

We do not feel called upon to discuss what is said as to the constitutionality of the statute under which this case is brought. That question has already been passed upon by the Supreme Court. The question presented in this case at this time is not whether the statute is constitutional, and consequently whether an appeal lies to this court, but rather whether the plain law of this State is to be enforced when it runs counter to the passion and prejudice of a community. The constitution of this State provides that property shall not be taken for public use without just compensation. The constitutional provision is wise and beneficent. What the public authorities can not do directly, can they accomplish indirectly by a cowardly or shameful neglect of duty? Does each citizen of the great State of Illinois hold his property, his home and his life at the mercy of the passions of a mob? Have the public authorities no duty in respect thereto? If they, because of cowardice or indifference, refuse to take any steps for the protection of the individual, is the community by whom such authorities were chosen to be held blameless when called to account by one who has seen all his earnings swept away by the rage of a mob? There is no man so influential and none so humble, none so great and none so insignificant that he may not at any time become the victim of the rage of a mob. Unbridled passion may vent its rage on one to-day; it may to-morrow make its most bitter enemy its victim. It is of but little consequence that by constitution and statute the powers of the government as to the individual are hemmed in if the private citizen is to be afforded no protection against the wild passions of a mob.

The judgment of the Circuit Court is reversed and the cause remanded.